Lauren M. Hausman, (CA Bar No. 349514)
**COPYCAT LEGAL PLLC**
113 N San Vicente Blvd
Suite 232
Beverly Hills, CA 90211
T: (877) 437-6228
E: lauren@copycatlegal.com


Attorney for Plaintiff
AUGUST IMAGE, LLC


# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUGUST IMAGE, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>WACOW MEDIA,<br><br>    Defendant. | Civil Action No. 2:23-cv-02771-DMG-AGR<br><br>**PLAINTIFF'S MOTION FOR DEFAULT FINAL JUDGMENT** |

Plaintiff August Image, LLC ("Plaintiff"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 55(b)(2), hereby moves for entry of a Default Final Judgment against defendant WaCow Media ("Defendant"), and

states as follows:

## PROCEDURAL SUPPORT FOR DEFAULT FINAL JUDGMENT

1.     On April 13, 2023, Plaintiff filed its Complaint in this action. The Complaint contains a single cause of action for copyright infringement against Defendant. See D.E. 1.

2.     On April 22, 2023, Defendant was served with a copy of the Summons and Complaint in this action. See D.E. 11.

3.     On May 16, 2023 (following expiration of Defendant's response deadline), Plaintiff filed its Request for Certificate of Default. See D.E. 12.

4.     On May 17, 2023, the Clerk entered a Clerk's Default [D.E. 13] against Defendant.

## FACTUAL SUPPORT FOR DEFAULT FINAL JUDGMENT[1]

### I.     Plaintiff's Business[2]

5.     Plaintiff is an agency doing business all over the world representing over 100 of some of the most creative and innovative contemporary photographers working today.

---

[1]     When a defendant defaults, "the Court accepts as true all well-pleaded factual allegations included in Whitehead's complaint". Whitehead v. Mix Unit, LLC, 2019 U.S. Dist. LEXIS 15560 (S.D.N.Y. Jan. 31, 2019); see City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint.") (quoting Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004)).

[2]     The facts set forth herein are based upon the well-pleaded allegations of the Complaint, the June 15, 2023, Declaration of Bill Hannigan (the "Hannigan Decl."), a true and correct copy of which is attached hereto as Exhibit "A."

6.　　Plaintiff boasts a wide collection of portrait, lifestyle, beauty and fashion photography for editorial and commercial licensing. Some of Plaintiff's image collection and a list of the photographers it represents is available on its website (at https://www.augustimage.com/).

7.　　Plaintiff sets itself apart from others because it is knowledgeable about its exclusive images and strives to provide a high level of customer satisfaction. In order to make its rights managed collection available to its clients, Plaintiff has spent years to secure exclusive contracts with the top tier photographers in the industry as well as the relationships, information and team to efficiently acquire the releases as necessary.

## II.    The Work at Issue in this Lawsuit

8.　　Danielle Levitt, Noe DeWitt, Mark Williams, Sara Hirakawa, and Mark Seliger are some of the many photographers represented by August Image, LLC (see https://www.augustimage.com/Photographers).

9.　　Danielle Levitt is a photographer and film director who has two decades of work documenting celebrity, music, fashion, and art. Ms. Levitt's unique ability to create connections has allowed her to break down barriers and exude agency and intimacy in her work.  Based in New York and Los Angeles, Ms. Levitt has strong cultural ties in both cities which impacts her projects, including her innovative process.  Her work can be viewed on her professional

website (at https://www.daniellelevitt.com/).

10.     Noe DeWitt is an American photographer and travel blogger. Mr. Dewitt was inspired by his uncle's fashion photography and his grandfather's industrial and World War II photographs. His editorial, catalog, and advertising clients include Architectural Digest, Travel + Leisure, Men's Journal, Sperry, Men's Vogue, Timberland Boot Co., and DKNY Kids to name a few. His work can be viewed on his professional website (at https://noedewitt.com/).

11.     Mark Williams and Sara Hirakawa are a married couple. They initially pursued individual careers as professional photographers, but decided to merge after their wedding in 2003. Since moving to Los Angeles, they have worked with clients including Neiman Marcus, Target, Vanity Fair, Rolling Stone, Vogue Japan, and Capital Records to name a few. Their work can be viewed on their professional website (at http://www.williamshirakawa.com/).

12.     Mark Seliger became the Chief Photographer for Rolling Stone between the years 1992-2002, where he shot over 175 covers. Most of his work can be seen in Vanity Fair, Italian Vogue, Harper's Bazaar, Elle and other magazines. He also does advertising work for Adidas, Anheuser-Busch, Levi's, McDonald's, Netflix, Ralph Lauren, Ray-Ban and more. He is the recipient of many esteemed awards like Alfred Eisenstaedt Award, Lucie Award, Clio Grand Prix, Cannes Lions Grand Prix, The One Show, ASME, SPG, the Texas Medal of

Arts Award, and has works exhibited in museums and galleries around the world, like the National Portrait Gallery at the Smithsonian Institution in Washington, D.C., the Museum of Fine Arts in Houston, and the National Portrait Gallery in London. His work can be viewed on his professional website (at https://www.markseliger.com).

**A.      *The Levitt Photograph***

13.      In 2013, Ms. Levitt created a professional photograph of the Big Gay Ice Cream Shop in New York titled "AU1382768" (the "Levitt Photograph"). A copy of Levitt Photograph is exhibited below:



14.      The Levitt Photograph was registered by Ms. Levitt with the Register of Copyrights on March 15, 2022, and was assigned Registration No. VA 2-295-

284.

15.     Ms. Levitt is the owner of the Levitt Photograph and has remained the owner at all times material hereto. A true and correct copy of the Certification of Registration pertaining to the Levitt Photograph is attached to the Complaint as Exhibit "A" thereto.

16.     For all times relevant to this action, Plaintiff has been appointed as the exclusive administrator and publisher of all copyright rights in and to the Levitt Photograph.  As such, Plaintiff is entitled to institute and maintain this action for copyright infringement.  <u>See</u> 17 U.S.C. § 501(b).

**B.     The DeWitt Photographs**

17.     In 2013, Mr. DeWitt created a series of professional photographs of actor Scott Eastwood (Clint Eastwood's son) titled "AU11324111," "AU11324170," "AU11324163," "AU11324132," "AU11324136," and "AU11324171" (collectively, the "<u>DeWitt Photographs</u>"). Copies of the DeWitt Photographs are exhibited below:



18.     The DeWitt Photographs were registered by Mr. DeWitt with the Register of Copyrights on January 29, 2021, and were assigned Registration No. VA 2-234-975.

19.     Mr. DeWitt is the owner of the DeWitt Photographs and has remained the owner at all times material hereto. A true and correct copy of the Certification of Registration pertaining to the DeWitt Photographs is attached to the Complaint as Exhibit "B" thereto.

20.     For all times relevant to this action, Plaintiff has been appointed as the exclusive administrator and publisher of all copyright rights in and to the DeWitt Photographs.  As such, Plaintiff is entitled to institute and maintain this action for copyright infringement.  See 17 U.S.C. § 501(b).

C.     *The Williams/Hirakawa Walking Dead Photographs*

21.     In 2014, Mr. Williams and Mrs. Hirakawa created a series of professional photographs of actors Steven Yeun and Lauren Cohan (from The

Walking Dead) titled "AU11037005," "AU11036919," "AU11037004," "AU11037003," "AU11037007," and "AU11037006" (collectively, the "Williams/Hirakawa Walking Dead Photographs"). Copies of the Williams/Hirakawa Walking Dead Photographs are exhibited below:





22.    The Williams/Hirakawa Walking Dead Photographs were registered by Mr. Williams and Mrs. Hirakawa with the Register of Copyrights on July 25, 2022, and were assigned Registration No. VA 2-310-566.

23.    Mr. Williams is the owner of the Williams/Hirakawa Walking Dead Photographs and has remained the owner at all times material hereto. A true and correct copy of the Certification of Registration pertaining to the Williams/Hirakawa Walking Dead Photographs is attached to the Complaint as Exhibit "C" thereto.

24.    For all times relevant to this action, Plaintiff has been appointed as the exclusive administrator and publisher of all copyright rights in and to the Williams/Hirakawa Walking Dead Photographs.  As such, Plaintiff is entitled to institute and maintain this action for copyright infringement.  See 17 U.S.C. § 501(b).

### D.    The Williams U.S. Soccer Photographs

25.     In 2013, Mr. Williams created a professional photograph of race car driver Courtney Force posing for ESPN The Magazine's "The Body" segment ("Force Photograph") titled "AU11034218" and a professional photograph of the US Women's National Soccer Team star Ali Krieger posing for ESPN The Magazine's "The Body" segment ("Krieger Photograph") titled "AU11034740" (collectively, the "Williams U.S. Soccer Photographs"). Copies of the Williams U.S. Soccer Photographs are exhibited below:



26.     The Williams U.S. Soccer Photographs were registered by Mr. Williams with the Register of Copyrights on September 13, 2017, and were assigned Registration No. VA 2-107-243.

27.     Mr. Williams is the owner of the Williams U.S. Soccer Photographs and has remained the owner at all times material hereto. A true and correct copy of the Certification of Registration pertaining to the Williams U.S. Soccer

Photographs is attached to the Complaint as Exhibit "D" thereto.

28.    For all times relevant to this action, Plaintiff has been appointed as the exclusive administrator and publisher of all copyright rights in and to the Williams U.S. Soccer Photographs.  As such, Plaintiff is entitled to institute and maintain this action for copyright infringement.  See 17 U.S.C. § 501(b).

### E.    *The Seliger Photograph*

29.    In 1995, Mr. Seliger created a professional photograph of the cast of the TV show Friends titled "AU2164434" (the "Seliger Photograph"). A copy of the Seliger Photograph is exhibited below:



30.    The Seliger Photograph was registered by Mr. Seliger with the

Register of Copyrights on February 5, 2020, and was assigned Registration No.
VA 2-196-874.

31.     Mr. Seliger is the owner of the Seliger Photograph and has remained
the owner at all times material hereto. A true and correct copy of a printout from
the Copyright Office with respect to the registration of the Seliger Photograph is
attached to the Complaint as Exhibit "E" thereto.

32.     For all times relevant to this action, Plaintiff has been appointed as
the exclusive administrator and publisher of all copyright rights in and to the
Seliger Photograph. As such, Plaintiff is entitled to institute and maintain this
action for copyright infringement.  See 17 U.S.C. § 501(b).

33.     The Levitt Photograph, DeWitt Photographs, Williams/Hirakawa
Walking Dead Photographs, Williams U.S. Soccer Photographs, and Seliger
Photograph are collectively referred to herein as the "Work."

## III.    Defendant's Unlawful Activities

34.     Defendant is a digital media platform that specializes in native
advertisement, social media promotion, content production, and marketing for the
Asian American market.

35.     Defendant advertises/markets its business primarily through its
website           (https://wacowla.com/),          social          media          (e.g.,
https://www.facebook.com/wacowfanpage                              and

https://www.linkedin.com/company/wacow-media/), and other forms of advertising.

36.    On multiple dates prior to the above-referenced photographers' copyright registration of the Work (excluding the Seliger Photograph), Defendant published the photographs comprising the Work (excluding the Seliger Photograph) on its website (including but not limited to https://wacowla.com/blog/2014/03/13/big-gay-ice-cream-la-open-soon/2/; https://wacowla.com/blog/2013/09/19/scott-eastwood/2/; https://wacowla.com/blog/2014/04/07/steven-yeun-lauren-cohan-fashion-photo/):









37.     On a date after Mr. Seliger's above-referenced copyright registration of the Seliger Photograph, Defendant published the Seliger Photograph on its Facebook page (at

https://www.facebook.com/wacowfanpage/photos/10158091025591966/):

38.    A true and correct copy of screenshots of Defendant's website, webpage, and/or social media, displaying the copyrighted Work, is attached to the Complaint as Exhibit "F" thereto.

39.    Defendant is not and has never been licensed to use, display, or distribute any of the Work. Defendant never contacted Plaintiff to seek permission to use the Work in connection with its website or for any other purpose.

40.    Defendant utilized the Work for commercial use – namely, in connection with the marketing and advertising of its software.

41.    Upon information and belief, Defendant located a copy of the Work on the internet and, rather than contact Plaintiff to secure a license, simply copied the Work for its own commercial use.

42.    Through its ongoing diligent efforts to identify unauthorized use of its

photographs, Plaintiff discovered Defendant's unauthorized use/display of the Work in May 2022. Following Plaintiff's discovery, Plaintiff notified Defendant in writing of such unauthorized use. To date, Plaintiff has been unable to negotiate a reasonable license for the past/existing infringement of the Work.

## ARGUMENT

### I.    Applicable Legal Standards

Federal Rule of Civil Procedure 55 sets forth two steps to obtain a default judgment.  First, when a defendant fails to plead or otherwise defend a lawsuit, the clerk of court may enter a clerk's default. Fed. R. Civ. P. 55(a). Second, after entry of the clerk's default, the Court may enter default judgment against the defendant so long as the defendant is not an infant or incompetent. Fed. R. Civ. P. 55(b)(2).

The Court need not make detailed findings of fact in the event of a default judgment. Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1990). The general rule is that, upon entry of a default, well-pleaded allegations in the complaint regarding liability are deemed true. Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977). Factors the Court should consider in evaluating a motion for entry of default judgment include: "(1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable

neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

## II.    The Eitel Factors Weigh in Favor of Granting Default Judgment

### A.    *Prejudice to Plaintiff if Default is Not Granted*

The first Eitel factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered. Here, absent entry of a default judgment, Plaintiff will be prejudiced as it will be without recourse with respect to Defendant's conduct. See Marohn v. Qingjun Yu, No. 1:22-cv-01070-ADA-SAB, 2022 U.S. Dist. LEXIS 233449, at *15 (E.D. Cal. Dec. 29, 2022) ("If default judgment is not entered, Plaintiff is effectively denied a remedy for the violations of its copyright as alleged, until such time as the Defendant in this action decides to appear in the litigation, which may never occur.").

### B.    *The Merits of Plaintiff's Substantive Claim and Sufficiency of the Complaint*

The second and third Eitel factors instruct the Court to evaluate the merits of the substantive claims alleged in the complaint as well as the sufficiency of the complaint itself. In doing so, the Court looks to the complaint to determine if the allegations contained therein are sufficient to state a claim for the relief sought. See Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978). Here, Plaintiff brings a

claim of copyright infringement under 17 U.S.C. § 501, which allows the owner of

a copyright to institute an action against an infringer of that copyright.

The Copyright Act, 17 U.S.C. § 501(a), provides that "[a]nyone who violates

any of the exclusive rights of the copyright owner as provided by sections 106

through 122 [17 U.S.C. §§ 106-122] or of the author as provided in section 106A(a)

[17 U.S.C. § 106A(a)] ... is an infringer of the copyright or right of the author, as

the case may be." 17 U.S.C. § 501(a).  Copyright infringement claims have two

elements: "(1) ownership of a valid copyright, and (2) copying of constituent

elements of the work that are original." Seven Arts Filmed Ent. Ltd. v. Content

Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting Feist Publ'ns, Inc.

v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)).

### *1.*    **Plaintiff Owns a Valid Copyright**

With respect to the first element, a certificate of registration "constitute[s]

prima facie evidence of the validity of the copyright and of the facts stated in the

certificate." 17 U.S.C. § 410(c). When the plaintiff presents such evidence,

the burden shifts to the defendant to "rebut[] the facts set forth in

the copyright certificate." United Fabrics Int'l, Inc. v. C&J Wear, Inc., 630 F.3d

1255, 1257 (9th Cir. 2011). Here, Plaintiff registered the Work pursuant to 17

U.S.C. § 411(a) with the Register of Copyrights as set forth above. By virtue of its

default, Defendant does not have any right to challenge Plaintiff's registration/ownership of a valid copyright.

### 2.    Defendant Copied the Work

The second element of a copyright infringement claim, copying, may be established by showing the defendant (1) had access to the work, and (2) the two works are "substantially similar" in idea and expression. Three Boys Music Corp. v. Bolton, 212 F.3d 477, 481 (9th Cir. 2000); see also Unicolors, Inc. v. Urban Outfitters, Inc., 853 F.3d 980, 984-85 (9th Cir. 2017) ("If there is no direct evidence of copying, a plaintiff may prove this element through circumstantial evidence that (1) the defendant had access to the copyrighted work prior to the creation of defendant's work and (2) there is substantial similarity of the general ideas and expression between the copyrighted work and the defendant's work.").

Here, the screenshots of Defendant's website and Facebook page unequivocally show Defendant's copying of the Work. Defendant's default further constitutes an admission as to such copying. There is no factual or subjective issue of "substantial similarity" here as Defendant copied and published duplicate images of the Work. Thus, Defendant undisputedly copied Plaintiff's copyrighted work.

### C.    The Sum of Money at Stake in the Action

The fifth <u>Eitel</u> factor considers the sum of money at stake in this action, which weighs in favor of granting default judgment. As set forth in detail below, Plaintiff seeks $643,700.00 in actual damages with respect to Defendant's copyright infringement of the Work (excluding the Seliger Photograph, in which Plaintiff seeks statutory damages). The amount being sought with respect to Defendant's copyright infringement of the Seliger Photograph is far below the $150,000.00 maximum that could be available to Plaintiff if it advanced a theory for recovering such amount. "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." <u>Vogel v. Rite Aid Corp.</u>, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014). Plaintiff submits that the amount of damages being sought herein with respect to Defendant's copyright infringement of each Photograph comprising the Work is not an excessive amount of money in light of the allegations contained in the Complaint. <u>See, e.g.</u>, <u>Marohn v. Qingjun Yu</u>, No. 1:22-cv-01070-ADA-SAB, 2022 U.S. Dist. LEXIS 233449, at *19 (E.D. Cal. Dec. 29, 2022) (holding that fourth Eitel factor favors entry of default judgment as $15,000.00 in statutory damages was not excessive or unreasonable for copyright infringement of single poster); <u>Corson v. Atherton</u>, No. 2:18-cv-01304-CAS(PLAx), 2020 U.S. Dist. LEXIS

83858, at *7 (C.D. Cal. May 11, 2020) (holding that fourth <u>Eitel</u> factor favors entry of default judgment as $30,000.00 in statutory damages for infringement of single photograph "is not so large or unreasonable so as to preclude the entry of default judgment"); <u>Loiseau v. Reel Network LLC</u>, No. 2:17-cv-08998-SVW-SS, 2018 U.S. Dist. LEXIS 226860, at *7 (C.D. Cal. July 26, 2018) (holding that fourth Eitel factor favors entry of default judgment as $30,000.00 in statutory damages was not excessive or unreasonable for copyright infringement of single photograph).

### D.   *The Possibility of a Dispute Concerning Material Facts*

The fifth <u>Eitel</u> factor considers the possibility of a dispute concerning material facts. As discussed above, Plaintiff has sufficiently alleged copyright infringement.  This factor weighs in favor of entering default judgment as there is no possibility of dispute regarding the material facts due to the factual allegations in the complaint being taken as true upon Defendant's default.  <u>See, e.g.</u>, <u>DirecTV, Inc.</u>, 503 F.3d at 851; <u>see also</u> <u>Hull v. KG Bellflower, Ltd. Liab. Co.</u>, No. CV 21-5220 DSF (RAOx), 2023 U.S. Dist. LEXIS 24400, at *4 (C.D. Cal. Feb. 13, 2023) (same).

### E.    *Whether the Default Was Due to Excusable Neglect*

The sixth <u>Eitel</u> factor considers the possibility that Defendant's default resulted from excusable neglect.  Courts have found that where a defendant was "properly served with the complaint, the notice of entry of default, as well as the paper in support of the [default judgment] motion," there is no evidence of excusable neglect.  <u>Shanghai Automation Instrument Co. v. Kuei</u>, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

As discussed above and evident by the docket, Defendant was properly served via substituted service on an employee in charge and authorized.  <u>See</u> D.E. 11. Further, Plaintiff (through undersigned counsel) made multiple pre-suit attempts to contact Defendant with respect to this matter, and despite Defendant knowing about the claim, Defendant decided to ignore this matter entirely. Defendant had every opportunity to appear in this action and proffer a defense. It chose not to do so.  Accordingly, this <u>Eitel</u> factor favors entry of default judgment.

### F.    *The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits*

Default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible." <u>Eitel</u>, 782 F.2d at 1472.  However, the policy favoring decisions on the merits does not weigh against entering default

judgment where, as here, Defendant's failure to appear has made a decision on the merits impossible at this juncture. Given the prejudice to Plaintiff if default judgment is not granted as discussed above, and the merits of the allegations contained in the Complaint, granting default judgment in this case would not violate the general policy under the Federal Rules of Civil Procedure favoring decisions on the merits. See PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible. Under Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action."). Accordingly, the policy favoring decisions on the merits does not preclude entering default judgment against Defendant under these circumstances.

## III.    Willfulness

Copyright infringers are subject to increased liability if the infringement is willful. See 17 U.S.C. § 504(c)(2). "[T]o prove willfulness under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless    disregard for,    or willful blindness    to,    the copyright holder's

rights." <u>Unicolors, Inc. v. Urban Outfitters, Inc.</u>, 853 F.3d 980, 991 (9th Cir. 2017) (alteration in original) (quoting <u>Wash. Shoe Co. v. A-Z Sporting Goods Inc.</u>, 704 F.3d 668, 674 (9th Cir. 2012)).  "[E]vidence that notice had been accorded to the alleged infringer… is perhaps the most persuasive evidence of willfulness." <u>Wash. Shoe</u>, 704 F.3d at 674 (quoting <u>Chi-Boy Music v. Charlie Club, Inc.</u>, 930 F.2d 1224, 1227 (7th Cir. 1991)).

"Where the defendant  has defaulted, willful copyright infringement is proven." <u>Globe Ent. & Media, Corp. v. Glob. Images USA</u>, No. 2:20-CV-11630-CAS, 2022 U.S. Dist. LEXIS 123358, at *15 (C.D. Cal. July 11, 2022) (quoting <u>Microsoft Corp. v. McGee</u>, 490 F. Supp. 2d 874, 880 (S.D. Ohio 2007)); <u>see also</u> <u>Reiffer v. Shearwater Pac. Capital Mgmt. Llc</u>, No. 18-cv-06053-JSW (RMI), 2020 U.S. Dist. LEXIS 227579, at *23 (N.D. Cal. May 13, 2020) ("Allegations of willful infringement are deemed to be true on default."); <u>Harrington v. Equity Asset & Prop. Mgmt.</u>, No. 3:18-cv-00216-GPC-NLS, 2020 U.S. Dist. LEXIS 6105, at *24 (S.D. Cal. Jan. 13, 2020) ("Allegations of willful infringement are deemed to be true on default.").

Here, the Complaint alleges that Defendant's conduct amounted to willful infringement of the Work. Defendant's refusal to participate in this lawsuit

demonstrates that Defendant had actual knowledge, or at least acted with reckless

disregard, of  the fact that its conduct infringed upon Plaintiff's exclusive

copyrights in the Work. Indeed, on this date, Defendant still currently infringes

(willfully) the Levitt Photograph, Krieger Photograph, and Seliger Photograph on

its website, demonstrating an utter and complete disregard to Plaintiff's request to

remove the infringing photographs, and the Copyright Act. See

https://wacowla.com/blog/2014/03/13/big-gay-ice-cream-la-open-soon/2/,

https://wacowla.com/blog/2015/07/09/kt-espn-body-2015/2/,                and

https://www.facebook.com/wacowfanpage/photos/10158091025591966/.

     Willfulness is further demonstrated by the inclusion on Defendant's website

of a copyright disclaimer/notice ("© 哇靠!洛杉磯 2023. All rights reserved.").[3]

The inclusion of such disclaimers indicates that Defendant understands the

importance of copyright protection and that it actually owns the content (including

photographs) published on its website.  See, e.g., Bell v. ROI Prop. Grp. Mgmt.,

LLC, No. 1:18-cv-00043-TWP-DLP, 2018 U.S. Dist. LEXIS 127717, at *3 (S.D.

Ind. July 31, 2018) ("[T]he willfulness of ROI's infringement is evidenced by the

fact that at the bottom of the webpage on which the Indianapolis photograph was

---

[3]    This copyright disclaimer translates to "© Whoa! Los Angeles 2023. All rights reserved.

unlawfully published appeared the following: 'Copyright © 2017.' By placing a copyright mark at the bottom of its webpage that contained Mr. Bell's copyrighted Indianapolis Photograph, Mr. Bell asserts ROI willfully infringed his copyright by claiming that it owned the copyright to everything on the webpage"); <u>John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.</u>, Civil Action No. 3:12-cv-4194-M, 2013 U.S. Dist. LEXIS 61928, at *12-13 (N.D. Tex. May 1, 2013) ("Once on Defendant's website, Defendant asserted ownership of Plaintiff's Registered Work by including a copyright notice at the bottom of the page. Based on these allegations, the Court finds Plaintiff has sufficiently pled a willful violation…."). Defendant clearly understands that professional photography such as the Work is generally paid for and cannot simply be copied from the internet.

Here, Plaintiff took the extra step of notifying Defendant of the initially discovered infringement pre-lawsuit. Defendant ignored undersigned counsel's e-mails, Federal Express (which included a draft copy of the Complaint in this lawsuit and warned Defendant such would be filed), e-mails, telephone calls, and voicemails. Defendant's refusal to pay a reasonable licensing fee and refusal to respond to multiple infringement notices demonstrates that Defendant had actual

knowledge, or at least acted with reckless disregard, of the fact that its conduct infringed upon Plaintiff's exclusive copyrights in the Work.

Accordingly, Defendant's default and the well-pled facts of the Complaint, which are admitted by Defendant's default, establish that Defendant's infringement of the Work was willful and deliberate.

## IV.    Plaintiff's Damages

### A.    *Actual Damages*

Pursuant to 17 U.S.C. § 504(b), a "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement." Actual damages for copyright infringement "are usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer." Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700, 708 (9th Cir. 2004) (internal quotations omitted); Goldberg v. Forum Ent. LLC, No. 22-cv-02641-RGK-SP, 2022 U.S. Dist. LEXIS 176914, at *9 (C.D. Cal. Sep. 22, 2022) ("[T]he requested $50,000 is reasonable given that actual damages are often measured by the profits Plaintiff would have earned by licensing the copyrighted work to Defendant."); Jarvis v. K2 Inc., 486 F.3d 526, 533 (9th Cir. 2007) (finding that actual damages are what a reasonable buyer would be required to pay a willing seller for the plaintiff's work.).

As set forth above and in the Hannigan Decl., Danielle Levitt's, Noe DeWitt's, Mark Williams', Sara Hirakawa's, and Mark Seliger's works are highly valuable and command substantial license fees. A sampling of commercial license agreements involving the photographers' works is attached to the declaration of Bill Hannigan and are further summarized below:

### 1.     *The Levitt Photograph*

| License Date | Description | License Amount | Usage Length |
|---|---|---|---|
| Danielle Levitt | | | |
| 02/28/2018 | Emily Blunt | $6,500.00 | One time (print) |
| 03/15/2021 | Amanda Gorman | $12,500.00 | 5 years (online) |

The article including the Levitt Photograph was published on Defendant's website on March 13, 2014, and still remains published. Thus, assuming the one (1) Levitt photograph would be licensed for $2,500.00 per year per photograph, that would still trigger 9x annual licenses and result in $22,500.00 of actual damages.

### 2.     *The DeWitt Photographs*

| License Date | Description | License Amount | Usage Length |
|---|---|---|---|
| Noe DeWitt | | | |
| 08/05/2021 | Costa Rica | $1,200.00 | 3 months (online) |

The article including the DeWitt Photographs were published on Defendant's website on September 13, 2013, and remained published thereon until

at least February 14, 2023 (when Plaintiff's representative sent an infringement notice). Thus, assuming the six (6) DeWitt photographs would be licensed for $4,800.00 per year per photograph, that would still trigger 9x annual licenses and result in $259,200.00 of actual damages.

### 3. *The Williams/Hirakawa Walking Dead Photographs*

| License Date | Description | License Amount | Usage Length |
|---|---|---|---|
| Mark Williams and Sara Hirakawa | | | |
| 02/12/2021 | Allyson Felix | $11,000.00 | 8 months (display) |
| 04/12/2018 | Sabina Zavodna | $5,000.00 | One time (print) |

The article including the Williams/Hirakawa Walking Dead Photographs was published on Defendant's website on April 7, 2014, and remained published thereon until at least February 14, 2023 (when Plaintiff's representative sent an infringement notice). Thus, assuming the six (6) Williams/Hirakawa Walking Dead Photographs would be licensed for $5,000.00 per year per photograph, that would still trigger 9x annual licenses and result in $270,000.00 of actual damages.

### 4. *The Williams U.S. Soccer Photographs*

| License Date | Description | License Amount | Usage Length |
|---|---|---|---|
| Mark Williams and Sara Hirakawa | | | |
| 02/12/2021 | Allyson Felix | $11,000.00 | 8 months (display) |
| 04/12/2018 | Sabina Zavodna | $5,000.00 | One time (print) |

The article including the Krieger Photograph was published on Defendant's website on July 29, 2013, and still remains published. Thus, assuming the one (1)

Krieger Photograph would be licensed for $5,000.00 per year per photograph, that would still trigger 9x annual licenses and result in $45,000.00 of actual damages.

The article including the Force Photograph was published on Defendant's website on July 9, 2015, and remained published thereon until at least February 14, 2023 (when Plaintiff's representative sent an infringement notice). Thus, assuming the one (1) Force Photograph would be licensed for $5,000.00 per year per photograph, that would still trigger 7x annual licenses and result in $35,000.00 of actual damages.

### 5. *The Seliger Photograph*

| License Date | Description | License Amount | Usage Length |
|---|---|---|---|
| Mark Seliger | | | |
| 11/20/2020 | Lenny Kravitz | $6,000.00 | One time (print) |
| 01/05/2022 | Eddie Van Halen | $2,300.00 | One time (print) |

The article including the Seliger Photograph was published on Defendant's website on June 9, 2021. The Seliger Photograph remained published thereon until at least February 14, 2023 (when Plaintiff's representative sent an infringement notice). Thus, even assuming the one (1) Seliger photograph would be licensed for $4,000.00 per year per photograph, that would still trigger 1x annual licenses and result in $4,000.00 of actual damages.

Defendant's inaction and refusal to participate in this lawsuit suppressed the information necessary to fully calculate Plaintiff's actual damages. Similarly, Defendant's refusal to cooperate in this lawsuit has prevented Plaintiff from

discovering any profits received by Defendant that would be recoverable pursuant to 17 U.S.C. § 504(b) in addition to Plaintiff's actual losses. To establish Defendant's profits subject to disgorgement under § 504(b), a "copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to provide his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). Defendant solely controls all information concerning its gross revenue related to its infringing uses of the Work, and it has stymied Plaintiff's ability to present that evidence to the Court.

Given the above, Plaintiff believes that the fairest measure of its actual damages in this case are the above summarized costs for licensing any image from Plaintiff's library multiplied by the number of years of use. The Ninth Circuit in Starz Ent., LLC v. MGM Domestic TV Distribution, LLC, 39 F.4th 1236, 1243 (9th Cir. 2022), recently held that a copyright plaintiff may recover damages dating back to the beginning of the infringement.

Additionally, in view of the foregoing, as Defendant infringed on the Seliger Photograph post-registration, and refused to appear and participate in discovery, Plaintiff thus elects to seek an award of statutory damages for Defendant's willful infringement of Plaintiff's copyrighted Seliger Photograph.

**B.** ***Statutory Damages are Appropriate for Defendant's Willful Copyright Infringement of the Seliger Photograph***

Pursuant to 17 U.S.C. § 504(c), Plaintiff hereby elects to recover statutory damages for Defendant's infringement of Plaintiff's exclusive rights in the copyrighted Seliger Photograph, and enhancement of its statutory award based upon the willfulness of such infringement. Where (as here) willful infringement has occurred, courts will generally look to a plaintiff's actual damages and award 3x – 5x to properly account for statutory damages.  See, e.g., Corson v. Gregory Charles Interiors, LLC, No. 9:19-cv-81445, 2020 U.S. Dist. LEXIS 142932, at *5-7 (S.D. Fla. Aug. 7, 2020) (trebling the plaintiff's actual damages after applying a scarcity multiplier); Buttnugget Publ'g v. Radio Lake Placid, Inc., 807 F. Supp. 2d 100, 110-11 (N.D.N.Y. 2011) ("[T]o put infringers on notice that it costs less to obey the copyright laws than to violate them, a statutory damage award should significantly exceed the amount of unpaid license fees."); Broad. Music, Inc. v. Prana Hosp'y, Inc., 158 F. Supp. 3d 184, 199 (S.D.N.Y. 2016) ("[C]ourts in this Circuit commonly award, in cases of non-innocent infringement, statutory damages of between three and five times the cost of the licensing fees the defendant would have paid."); Broad. Music, Inc. v. George Moore Enters., Inc., 184 F. Supp. 3d 166, 171-72 (W.D. Pa. Apr. 25, 2016) ("Statutory damages serve the dual purposes of compensation and deterrence: they compensate the plaintiff for the infringement of its copyrights;    and    they deter future    infringements by punishing the defendant for its actions.").

In cases of non-willful infringement, statutory damages may be awarded up to $30,000.00 resulting from the infringement of the copyrighted Work.  See 17 U.S.C. § 504(c)(1). However, as discussed above, Defendant's conduct – as well as its decision not to defend against Plaintiff's claim – demonstrates that its conduct is willful and that the Court may award up to $150,000.00.

Given the circumstances of the instant case, Plaintiff submits that an award of statutory damages in the amount of ***$12,000.00*** ($4,000.00 x 3) under 17 U.S.C. § 504(c)(2) is appropriate to compensate Plaintiff for the damages suffered, to create a strong disincentive against infringers intentionally hiding the profits from their infringing conduct in the hope of earning more than they can be held accountable for in actual damages, and to deter future violations of copyright law.

## V.   Reasonable Attorneys' Fees are Appropriate

Pursuant to 17 U.S.C. § 505, "the court in its discretion may allow the recovery of full costs by or against any party… the court may also award reasonable attorney's fee to pay the prevailing party as part of the costs." Upon entry of a final judgment, Plaintiff is the prevailing party in this action. In view of the willful nature of Defendant's infringement and its failure to defend or otherwise participate in this action, leading to unjustified delays and increased costs and fees, an award of full costs and attorney's fees to Plaintiff is appropriate.  Accordingly, given the willfulness of Defendant's conduct and refusal to participate in this

lawsuit, Plaintiff requests that the Court find that Plaintiff is entitled to recover its reasonable attorneys' fees (subject to a further timely-filed motion fixing the amount of such fees).

## VI.    Entry of a Permanent Injunction is Appropriate

Pursuant to 17 U.S.C. § 502(a), "[a]ny court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 USCS § 502.  "Section 502(a) of the Copyright Act specifically provides for injunctive relief in circumstances such as those requiring prevention of continued copyright infringement by a defendant." Sony Music Entm't v. Miernicki, No. 09-CV-8084-PCT-PGR, 2009 U.S. Dist. LEXIS 69865, at *3 (D. Ariz. Aug. 3, 2009). "Injunctions are regularly issued pursuant the mandate of Section 502 in order to protect the public's interest in upholding copyright protections." Luminence, LLC v. Top Lighting Corp., No. 17cv1110-WQH-BLM, 2017 U.S. Dist. LEXIS 209389, at *9 (S.D. Cal. Dec. 20, 2017).

As established by the well-pled facts of the Complaint and admitted by Defendant's default, this Court has proper jurisdiction over this action. Defendant's conduct has caused, and any continued infringing conduct will continue to cause irreparable injury to Plaintiff, such that Plaintiff has no adequate

remedy at law. For example, the ability of Defendant to use Plaintiff's work for its own commercial benefit without compensation to Plaintiff greatly impairs the market value of the work, since others competing in that business or in related business areas, will not want to obtain a license to Plaintiff's works if it is already associated with a competing business; and potential licensees of Plaintiff will not want to pay license fees to Plaintiff if they see other commercial enterprises taking and using Plaintiff's photographs for their own commercial purposes without paying any fee at all.

Accordingly, Plaintiff requests the Court to enter a permanent injunction against Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, vendors and assigns, and all those in active concert and participation with Defendant, prohibiting it from (a) directly or indirectly infringing Plaintiff's copyrights or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any works derived or copied from Plaintiff's copyrighted photograph or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted photograph owned by Plaintiff.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court to enter final default judgment against Defendant; award Plaintiff $643,700.00 for Defendant's infringement of the Work, retain jurisdiction to enforce the Final Judgment and Permanent Injunction and consider any motion for attorney's fees, expenses, and costs; permanently enjoin Defendant from infringing activities; and, for any other relief the Court deem just and proper. A proposed order is filed herewith.

Dated: June 16, 2023.                    By: /s/ Lauren Hausman_____
                                         Lauren Hausman, Esq.
                                         Attorney for Plaintiff
                                         August Image, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record and a copy served via U.S. Mail to WaCow Media, c/o Kenneth Lin, 1216 S Garfield #203, Alhambra, CA 91801.

                                         /s/ Lauren Hausman____
                                         Lauren Hausman, Esq.